JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6758
Fax: (415) 436-6753
Email: wilson.leung@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>CARLOS GARRIDO, )<br>   a/k/a "Tweety," )<br>)<br>Defendant. )<br>) | No. CR 07-00754 PJH<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND TO SEVER COUNTS<br><br>Hearing: April 30, 2008<br>Time: 1:30 pm<br>Court: Honorable Phyllis J. Hamilton |

## I. INTRODUCTION

Defendant Carlos Garrido ("Garrido") has moved to suppress physical evidence resulting from a search conducted on his vehicle following his arrest as well as to sever the two counts that are pending against him. Because the search of his vehicle was a proper inventory search, Garrido's suppression motion should be denied. Likewise, because the illegal alien in possession of a firearm count is similar and connected to the illegal re-entry count, and because Garrido cannot establish manifest prejudice from trying the two counts together, his severance motion should also be denied.

1

## II.  BACKGROUND

2   On February 25, 2006, at approximately 8:26 pm, in the vicinity of Valencia and 19th Streets

3   in San Francisco's Mission District, Carlos Garrido backed out of an alley in a gold Honda

4   automobile and blocked the path of an unmarked police car in which Officers Robert Sanchez

5   and Robert Greiner of the San Francisco Police Department ("SFPD") were patrolling.  (Incident

6   Report at 4) (attached as Exhibit B to Declaration of Eric Matthew Hairston in support of defense

7   motion).  The two police officers noticed that the registration of the vehicle that Garrido was

8   driving had expired, and they called their dispatcher for a marked police unit to cite Garrido.

9   (Incident Report at 4).

10   The officers followed Garrido as Garrido turned right from Valencia Street and headed east

11   on 19th Street.  (Incident Report at 4).  Garrido then made another right on to Mission Street and

12   headed south for a block until turning left and heading east on 20th Street.  (Incident Report at 4).

13   Shortly thereafter, Garrido pulled into the parking lot of a laundromat, turned off the Honda's

14   ignition, and exited the vehicle.  (Incident Report at 4).

15   After Garrido got out of the Honda, Officers Sanchez and Greiner approached Garrido and

16   Officer Sanchez asked if the Honda belonged to him.  Garrido replied, "No."  (Incident Report at

17   4).  Officer Sanchez then asked Garrido whether Garrido had a driver's license, to which Garrido

18   also replied, "No."  (Incident Report at 4).  Officer Sanchez then asked Garrido whether he had

19   any identification, and Garrido replied, "No" again.  (Incident Report at 4).  Thereafter, Officers

20   Sanchez and Greiner placed Garrido under arrest for driving without a license, in violation of

21   California Vehicle Code Section 12500(a).  (Incident Report at 4).

22   After arresting Garrido, Officer Sanchez asked Garrido for the keys to the Honda, to which

23   Garrido replied, "You can't search my car, I wasn't even driving, you can't pull me over because

24   you don't have a police car."  (Incident Report at 4).  At that point, other police officers —

25   including then-Officer (now Sergeant) Dion McDonnell —  arrived to assist Officers Sanchez

26   and Greiner.  (Incident Report at 4).

27   Officer McDonnell, who had seen Garrido on previous occasions and knew him by his

28   nickname "Tweety, " recognized Garrido and advised Officer Sanchez that Garrido was a

1   member of the "MS-13" gang, i.e., "La Mara Salvatrucha." (Incident Report at 4; Declaration of

2   Dion McDonnell ("McDonnell Declaration") ¶ 3).  Officer McDonnell also cautioned Officer

3   Sanchez that he had previously arrested MS-13 gang members who hid guns in the dashboard of

4   their cars.  (Incident Report at 4; McDonnell Declaration ¶ 7).

5       Thereafter, Garrido was transported in a marked police car to the SFPD's nearby Mission

6   Station for processing, while Officer Sanchez, after securing verbal authorization from a Sergeant

7   Cota, drove the gold Honda to Mission Station.  (Incident Report at 5; McDonnell ¶ 5).  There,

8   pursuant to SFPD policy, Officers Sanchez and McDonnell searched the gold Honda for the

9   purpose of creating an inventory of any property found in the vehicle.  (Incident Report at 5;

10  McDonnell Declaration ¶ 6-10).  During this search, Officer McDonnell pulled on the stereo

11  located in the front center console of the Honda to determine whether the stereo was a removable

12  model.  (McDonnell Declaration ¶ 9 and Exhibit B to McDonnell's Declaration (photograph of

13  center console)).  As a result, the face of the center console fell open, exposing a cavity within

14  the dashboard behind the center console.  (McDonnell Declaration ¶ 9 and Exhibit C to

15  McDonnell's Declaration (photograph of center console after face fell open)).  Officer

16  McDonnell noticed that a small pistol with a tan grip was located within the dashboard cavity,

17  and he retrieved it and provided it to the SFPD's Crime Scene Unit for processing.  (McDonnell

18  Declaration ¶ 9 and Exhibit C to McDonnell's Declaration).

19      In addition to the pistol, the officers recovered other items of personal property from the

20  Honda — including miscellaneous papers, compact disks, and clothing — which the officers

21  listed in the incident report as well as in a separate property receipt that was provided to Garrido,

22  and in an "Inventory of Towed Vehicle" form (also known as a "tow slip") that was left in the

23  Honda.  (Incident Report at 2, 5; Exhibit D to McDonnell's Declaration (copy of receipt); Exhibit

24  E to McDonnell's Declaration (copy of Inventory of Towed Vehicle form); see also McDonnell

25  Declaration ¶ 10).  These documents also listed personal property — such as a belt and a bandana

26  — that was taken from Garrido's person during processing.  (Incident Report at 2, 5; Exhibit D to

27  McDonnell's Declaration (receipt); Exhibit E to McDonnell's Declaration (Inventory of Towed

28  Vehicle form); see also McDonnell Declaration ¶ 10).

1   Following the inventory of the Honda, the car was towed from Mission Station and

2   impounded. (McDonnell Declaration ¶ 10). Garrido, in turn, was booked on charges of carrying

3   a concealed weapon, in violation of California Penal Code Sections 12025(a)(1) and (b)(3),

4   participating in a criminal street gang, in violation of California Penal Code Section 186.22(a),

5   driving an unregistered vehicle, in violation of California Vehicle Code Section 4000(a), and

6   driving without a license, in violation of California Vehicle Code Section 12500(a). (Incident

7   Report at 1). At the time of his arrest, Garrido was in the United States illegally, so he was

8   transferred from the custody of the SFPD to Immigration and Customs Enforcement ("ICE")

9   prior to the filing of criminal charges. (Exhibit A to Declaration of W.S. Wilson Leung (copy of

10  March 1, 2006 Immigration and Customs Enforcement memorandum regarding Garrido).[1]

11  Garrido was subsequently deported from the United States on or about March 22, 2006. (Exhibit

12  B to Declaration of W.S. Wilson Leung (copy of removal warrant for Carlos Garrido)).

13  On November 29, 2007, a federal Grand Jury in the Northern District of California issued a

14  one-count indictment charging Garrido with being an illegal alien in possession of a firearm, in

15  violation of Title 18, United States Code, Section 922(g)(5)(A), based on his possession of the

16  pistol that was recovered from the Honda he drove on February 25, 2006. (Docket Entry 1).

17  Garrido was arrested for the firearm charge on or about February 19, 2008 (Docket Entry 2), and

18  on March 6, 2008, the Grand Jury issued a superseding indictment, which added a second count

19  against Garrido: illegal re-entry into the United States, in violation of Title 8, United States Code,

20  Section 1326 (Docket Entry 5)

21

22

23

24  .

25

26  _____

27      [1]      The March 1, 2006 immigration memorandum references Garrido as "Felipe
    Vasquez-Ramirez," which was a false identity that Garrido employed. A copy of a fake United
28  States passport bearing Garrido's photograph and the Vasquez-Ramirez name is attached as part
    of Exhibit A to the Leung Declaration.

### III.  DISCUSSION

**A.  The Defendant's Suppression Motion Should Be Denied Because The Search Of The Honda Was A Proper Inventory Search**

Relying solely on the facts set forth in the Incident Report relating to his February 25, 2006 arrest,[2] Garrido contends that the search of the Honda that he was driving just prior to his arrest violated the Fourth Amendment because the search was conducted without a warrant.  (Def. Motion at 3).  This claim, however, fails to recognize that the search that was conducted by Officers McDonnell and Sanchez was a valid inventory search that does not violate the Constitution.  Accordingly, Garrido's suppression motion should be denied.

**1.  Applicable Law**

The Fourth Amendment prescribes unreasonable searches, and as a general rule, a search that is conducted without a warrant is presumed to be unreasonable unless it falls within an established legal exception to the warrant requirement.  See Katz v. United States, 389 U.S. 347, 357 (1967); see, e.g., United States v. Rambo, 74 F.3d 948, 953 (9th Cir. 1996).  One of the exceptions to the warrant rule is the search of an impounded vehicle that is conducted for the purpose of securing the vehicle and any property contained in the vehicle: the Supreme Court "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." South Dakota v. Opperman, 428 U.S. 364, 737 (1976); accord United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989); United States v. Feldman, 788 F.2d 544, 550 (9th Cir. 1986). The purpose of an inventory search is threefold: "the protection of the owner's property while it

_____

[2]    By relying solely on the Incident Report to provide a factual basis for his motion as required by the local rules of this Court, see Crim. L.R. 47-2 (expressly incorporating Civ. L.R. 7-5(a), in turn expressly incorporating Fed. R. Civ. P. 56(e) and requiring the filing of declarations setting forth all of the facts upon which it is contended that a motion should be granted); see also United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (upholding the denial of a motion to suppress that failed to provide supporting affidavits), Garrido appears not to be disputing any of the facts set forth therein.  Should Garrido improperly make additional factual assertions for the first time in his reply, the Government would respectfully request that it be given the opportunity file a sur-reply to respond to these new facts.

1  remains in police custody; the protection the police against claims or disputes over lost or stolen

2  property; and the protection of the police from potential danger."  Opperman, 428 U.S. at 369;

3  accord United States v. Penn, 233 F.3d 1111, 1114 (9th Cir. 2000); Wanless, 882 F.2d at 1463;

4  Feldman, 788 F.3d at 550-51.

5      A local police department can authorize its officers to conduct inventory searches, but this

6  authority must be "exercised according to standard criteria and on the basis of something other

7  than suspicion of evidence of criminal activity."  Colorado v. Bertine, 479 U.S. 367, 375 (1987);

8  cf. Florida v. Wells, 495 U.S. 1, 4-5 (1990) (affirming invalidation of inventory search because

9  Florida Highway Patrol "had no policy whatever" regarding opening of containers during vehicle

10  searches).  Put another way, "[t]o be valid, an inventory search must conform to a standardized

11  and established local procedure, and must be motivated by a 'concern to inventory [the items]

12  rather than to search for other incriminating evidence.'" United States v. Bowhay, 992 F.2d 229,

13  230 (9th Cir. 1993) (quoting Feldman, 788 F.2d at 553) (brackets in original).  Of course, the

14  mere fact that a law enforcement officer conducting an inventory search may also have an

15  investigative motive does not invalidate an inventory search.  See Bowhay, 992 F.2d at 230

16  ("Bowhay argues that because the officer who searched the bag had an investigative as well as an

17  inventory motive to search, the search could not be valid under the 'inventory' exception to the

18  Fourth Amendment.  We reject this argument, and affirm.  Since the officer's genuine purpose

19  was to take an inventory as required by department policy, his second purpose of further

20  investigation does not require suppression."), 231 ("In this case, the department's policy was to

21  search everything; the officer had no discretion.  Because of this, the presence of an investigative

22  motive does not invalidate the inventory search.").

23      Rather, the touchstone of the propriety of an inventory search is not the subjective intent of

24  the officers conducting the search, but whether there existed a local police policy based on the

25  objectives set forth in Opperman that cabined the officers' discretion and guided their conduct.

26  See Bowhay, 922 F.2d at 230-31; see, e.g., Feldman, 788 F.2d at 553 (holding that inventory

27  search was proper despite police suspicion that vehicle contained evidence of other crimes).

28  Indeed, even an officer's *mistaken* understanding and execution of an otherwise valid inventory

search policy does not invalidate a search conducted pursuant to the policy.  See Penn, 233 F.3d at 115-16 (holding that a search conducted pursuant to Portland's inventory search policy was valid because the plan sufficiently limited a searcher's discretion, despite the fact that the officer conducting search may have mistakenly believed he had greater discretion than allowed by the plan to release certain property prior to inventory: "[T]he question here is whether a Portland police officer has discretion to release property before inventorying it.  As we have explained, we conclude that police and city policy is to the contrary.  This remains true, regardless of whether Officer McConnell correctly or mistakenly let Carruthers get out of the car with her purse [without inventorying the purse]").

## 2.  Discussion

Under these guiding principles, the search of the Honda in which Garrido was driving was clearly proper as an inventory search conducted in accordance with the policy directives of the SFPD.  Under relevant SFPD directives, the officers who arrested Garrido were required to impound the vehicle he was driving.  Moreover, under SFPD directives, once Garrido's vehicle was impounded, the officers were required to inventory the contents of the vehicle.

### i.  SFPD Policy Regarding Impounding And Towing Of Vehicles

SFPD General Order 9.06 (revised July 10, 1996) (attached as Exhibit A to the McDonnell Declaration), sets forth the SFPD's policy with respect to the impounding and towing of vehicles. Section II of General Order 9.06 sets forth the conditions when an officer is authorized to tow a vehicle driven by or in the control of an individual who is taken into custody.  See General Order 9.06 at 1.  While subsection 1 of Section II-A describes circumstances under which an officer may tow a vehicle, subsection 2 describes circumstances when towing is mandatory:

> MANDATORY CIRCUMSTANCES: It is the policy of the Department that officers shall tow any vehicle being driven by a person who has had his/her driver license suspended or revoked, or by a person who has never been issued a driver license.  The vehicle shall not be released to anyone at the scene; however, a commercial vehicle (e.g., cab, truck, bus) may be released to an agent of the company who is a licensed driver.

General Order 9.06 at 2.

General Order 9.06 also provides that officers can move a vehicle prior to towing when

necessary for: "(1) Office or citizen safety; or (2) The protection of evidence; or (3) When, in the supervisor's opinion, further investigation of the vehicle is necessary." General Order 9.06 at 2 (Section II-A-5-a).

Significantly, Section III-B of General Order 9.06 *requires* officers to inventory the contents of impounded vehicles:

> When towing a vehicle, officers shall inventory the contents of the vehicle. The purpose of the inventory is to locate and secure any valuable property, to guard against false claims, and to protect officers and others from dangerous objects. When conducting an inventory, officers may search anywhere inside the vehicle including consoles, glove boxes, under the seats, inside the trunk and inside any container of the vehicle.

General Order 9.06 at 5.

Section III-B goes on to describe the form that should be used for an inventory (called an "Inventory of Towed Vehicle" form), including what information should be contained on the form, and to whom this should be distributed. See General Order 9.06 at 5 (Section III-B-1). Section III-B also instructs officers to remove any items of extraordinary value from an impounded vehicle, as well as any firearms found in the vehicle. See General Order 9.06 at 6 (Section III-B-2).

### ii. The Search Of The Honda Was A Valid Inventory Search Required By SFPD General Order 9.06

Thus, in light of Garrido's arrest for driving without a license, the arresting officers were required under General Order 9.06 to impound and tow the Honda that Garrido was driving. General Order 9.06 also required that, after impounding the Honda, the officers were required to inventory the vehicle's contents in order to "locate and secure any valuable property, to guard against false claims, and to protect officers and others frm dangerous objects." The search of the Honda that Officers McDonnell and Sanchez conducted, therefore, falls squarely with the ambit of the inventory search exception to the warrant requirement: General Order 9.06 sets forth quite explicitly what the officers were required to do, it afforded no discretion to the officers concerning whether to conduct the search, and the purpose of the search was entirely proper. See Opperman, 428 U.S. at 369; Penn, 233 F.3d at 1114; Wanless, 882 F.2d at 1463; Feldman, 788

F.3d at 550-51.  The officers were also authorized to open any containers, including consoles, in

the vehicle, and it was ultimately within the center console, behind a faux face, where Officer

McDonnell found the firearm that forms the basis of Count One against Garrido.[3]  In addition,

after the search, the officers prepared an inventory of the items found by listing them in the

relevant incident report (Incident Report at 2), as well as on a tow slip left in the Honda and a

receipt provided to Garrido (Exhibits D and E to the McDonnell Declaration).  Although General

Order 9.06 was not followed perfectly — e.g., the incident report failed to indicate the name of

the supervisory officer who authorized moving the Honda to Mission Station — failure to

comply perfectly with the Order does not render the search of the Honda unconstitutional.

Rather, in light of the legitimate purpose of the SFPD's inventory policy and the policy's strict

limitations on a searching officer's discretion, substantial compliance with the policy is sufficient

to pass constitutional muster.  Cf. Penn, 233 F.3d at 115-16 (even though officer may have been

mistaken as to the scope of his discretion under Portland's inventory search policy, the policy

itself was valid and, therefore, search conducted in substantial compliance with policy was

constitutional).

Moreover, although Officers McDonnell and Sanchez suspected that Garrido may have had a

gun secreted in the Honda, these suspicions do not violate the Fourth Amendment.  In light of the

fact that General Order 9.06 *required* the officers to inventory the Honda, the officers' (correct)

suspicion that Garrido had a gun in the Honda does not undermine the validity of the inventory

search they conducted.  See Bowhay, 992 F.2d at 230 ("Since the officer's genuine purpose was

---

[3]         Given the circumstances described above, and the explicit terms of General Order
9.06, the center console in which the charged firearm was found fell within the scope of an
inventory search.  In the alternative, however, the Government also submits that, assuming that
the console was somehow not properly part of an authorized inventory search, the plain view
doctrine renders the discovery of the charged firearm constitutional, in light of the fact that the
console face fell off with little impetus from Officer McDonnell during the course of a proper
inventory search.  See, e.g., United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003) ("To
satisfy the plain view doctrine: (1) the officer must be lawfully in the place where the seized item
was in plain view; (2) the item's incriminating nature was 'immediately apparent;' and (3) the
officer had 'a lawful right of access to the object itself.'")

Opp'n. to Mot. To Suppress and Sever
CR 07-00754 PJH                                    9

1  to take an inventory as required by department policy, his second purpose of further investigation

2  does not require suppression."), 231 ("In this case, the department's policy was to search

3  everything; the officer had no discretion. Because of this, the presence of an investigative motive

4  does not invalidate the inventory search."); Feldman, 788 F.2d at 553 (same). Indeed, it would

5  be completely illogical — not to mention contrary to explicit Supreme Court and Ninth Circuit

6  holding — to limit inventory searches only to situations when the searcher subjectively believes

7  that no evidence of criminal activity will be found.

8      For the reasons set forth above, the search of the Honda that Garrido was driving prior to his

9  arrest was constitutional because it was an inventory search that was properly required and

10  properly conducted under SFPD policy.[4] Accordingly, Garrido's motion to suppress should be

11  denied. See United States v. Trengali, 2006 WL 1050170, at *7 (N.D. Cal. April 20, 2006)

12  (DLJ) ("Given that Officer Cleghorn was proceeding according to standard practice when he

13  made the decision to tow the Defendant's vehicle, and when he subsequently conducted the

14  vehicle search, the Court concludes that Officer Cleghorn's search of the vehicle did not violate

15  the Defendant's constitutional rights.").

16  **B. The Defendant's Severance Motion Should Be Denied**

17      In addition to suppression of physical evidence, Garrido also asks the Court to sever the two

18  counts with which he is charged. He contends that the counts were misjoined and that trying the

19  counts jointly would prejudice him. (Def. Motion at 5). Neither of these arguments has merit.

20

21  _____

22      [4]    The Government respectfully directs the Court's attention to the Ninth Circuit's

23  decision in United States v. Ramos-Oseguera, 120 F.3d 1028 (9th Cir. 1997) (overruled on
    Apprendi grounds), and note that the relevance of this case appears to have been abrogated by
    changing facts. In Ramos-Oseguera, the Circuit held that drugs found in the pocket of a pair of

24  jeans left in a car that was discovered during an inventory search of the car should have been
    suppressed because the SFPD inventory search policy at the time did not authorize or compel the

25  search of closed containers — including, apparently, jeans — found within a vehicle. See id. at

26  1036. The SFPD policy cited in Ramos-Oseguera, however, appears to exist no longer, because
    General Order 9.06, revised on July 10, 1996 — after the crimes at issue in Ramos-Oseguera

27  took place (which were charged through 1993) — explicitly provides that an officer may search
    "anywhere inside the vehicle including consoles, glove boxes, under the seats, inside the trunk

28  and inside any container of the vehicle." General Order 9.06 at 5.

**1.  Applicable Law**

Federal Rule of Criminal Procedure 8(a) provides for joinder of two or more offenses if the offenses are (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected together or part of a common scheme or plan."  Fed. R. Crim. P. 8(a); see United States v. Jawara, 474 F.3d 565, 572 (9th Cir. 2007).  Rule 8(a) has been "'broadly construed in favor of initial joinder.'"  See id. at 573 (quoting United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir. 1971).  The basis for joinder should be apparent from the indictment, see Jawara, 474 F.3d at 572-73, although for determining whether joinder is valid under the "same or similar character" test, the Court is free to consider other factors, such as "the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims," id. at 578.

Of course, even if counts are properly joined under Rule 8(a), the Court retains the discretion to sever counts under Federal Rule of Criminal Procedure 14(a).  The relevant inquiry for severance under Rule 14(a) is whether joinder is so "manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever."  United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976), quoted in United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir. 2007); see United States v. Mitchell, 502 F.3d 931, 963 (9th Cir. 2007); United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986); United States v. Irvine, 756, 708, 712 (9th Cir. 1985).

**2.  Discussion**

**i.   Joinder Was Proper Under Rule 8(a)**

In this case, the illegal alien in possession of a firearm count charged in Count One of the Superseding Indictment and the illegal re-entry of a previously deported alien count charged in Count Two of the Superseding Indictment were properly joined under the "same or similar character" and the "connected together" bases of Rule 8(a).

As described in greater detail above, Garrido was arrested on February 25, 2006 after a traffic stop, was then transferred from SFPD to ICE custody, and then deported.  Sometime thereafter,

1   and no later than February 19, 2008 — when he was arrested in this case — Garrido illegally re-

2   entered the United States.  Accordingly, the charges are connected together: but for his arrest in

3   February 2006, Garrido would not have been deported from the United States, and if he had not

4   been deported from the United States, he would not have been able to commit the later illegal re-

5   entry crime, which requires as an element the fact of a prior deportation.  Garrido's conduct on

6   which Count One is based led to Garrido's commission of Count Two, and thus, the two charges

7   are connected.

8       In addition, the two charges are of the "same or similar character," which provides another

9   basis for joinder.  Both charges have a common element that requires proof beyond a reasonable

10  doubt, i.e., that Garrido was an illegal alien.  Evidence of this element will come from the same

11  sources, including, inter alia, immigration records and testimony from immigration officials.

12  Accordingly, trial of both counts together would serve the interests of judicial economy.  See,

13  e.g., Lopez, 477 F.3d at 1117 (in case involving narcotics-related charges along with charges of

14  illegal alien in possession of a firearm and illegal re-entry, affirming denial of motion to sever

15  narcotics-related charges and noting that "judicial economy strongly supported the denial of the

16  motion to sever" because of overlapping evidence, including the fact that "Counts Two and Five

17  each required the Government to prove that Lopez was an illegal alien"); United States v. Portac,

18  Inc., 869 F.2d 1288, 1293 (9th Cir. 1989) (joinder proper when facts underlying joined offenses

19  are so intertwined that most of the evidence admissible in proof of one offense was also

20  admissible in proof of the other offense).

21      Thus, United States v. Terry, 911 F.2d 272 (9th Cir. 1990), which is cited by Garrido, is

22  inapposite to the present case.  In Terry, the defendant was charged with narcotics-related crimes

23  as well as with being a felon in possession of a firearm.  See id. at 273.  The Ninth Circuit held

24  that because the conduct that led to the narcotics charges preceded the firearm possession by

25  thirteen days as well as occurred in a different location, and, more importantly, because the

26  evidence for the narcotics-related charges did not overlap at all with the evidence of the firearm

27  charge, joinder was improper.  See id. at 276 and footnote 1 ("At trial, none of the evidence was

28  applicable to both counts and none of the witnesses testified as to both counts.").  In contrast, in

Garrido's case, there is overlapping proof of a common element of the charged crimes.

Accordingly, for the foregoing reasons, joinder of the two counts in the Superseding Indictment was proper.

### ii. Severance Under Rule 14(a) Should Be Denied

Finally, Garrido's motion for severance under Rule 14(a) should be denied because he has failed to establish that he would suffer manifest prejudice from a single trial of both counts. He contends that a single trial would lead to the introduction of otherwise inadmissible evidence. This claim, however, overlooks the fact that the two counts are connected: Garrido's arrest in 2006, which is the subject of Count One, led to his deportation, which, in turn, is an essential element of Count Two. In addition, in both counts, Garrido's status as an illegal alien is an element of the charges and, therefore, is directly at issue. As a result, the evidence for both counts are intertwined, and separate, duplicative trials would not avoid the introduction of the evidence to which Garrido objects.

Moreover, Garrido's claim that proof of one count would be manifestly prejudicial to the other count is ill founded. Evidence of his status as an illegal alien — or even as an illegal alien who was previously deported — is hardly so inflammatory that it would cloud a jury's judgment and lead it to convict based on impermissible grounds. See, e.g., Lopez, 477 F.3d at 1116 ("No law supports Lopez's contention that the jury's knowledge that he was an illegal alien created 'prejudice of such magnitude that the defendant's right to a fair trial [was] abridged.'") (quoting United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir. 1986) (alteration in original); cf. "San Francisco Promotes Services For Illegal Immigrants," San Francisco Chronicle, April 3, 2008, http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2008/04/02/BA0NVUM70.DTL (reporting that San Francisco was launching campaign to advise illegal immigrants of its policy of being a "sanctuary city" for illegal immigrants so they would be more likely, for instance, to enroll their children in school or report crimes). Similarly, evidence that Garrido possessed a firearm — without any suggestion that he used it or engaged in other crimes with it — cannot be deemed so prejudicial that a properly instructed jury would not be able to consider the proof properly. Cf. United States v. Sutcliffe, 505 F.3d 944, 958-59 (9th Cir. 2007) (in case involving interstate

1   transmission of threats and illegal transfer of Social Security Numbers, affirming decision to

2   admit, with proper limiting instructions, evidence of defendant's uncharged possession of a rifle,

3   bayonet, and ammunition as evidence of intent).

4        Moreover, United States v. Lewis, on which Garrido heavily relies, is entirely inapposite.  In

5   Lewis, the defendant was charged and convicted of conspiracy, bank larceny, killing to avoid

6   apprehension for bank larceny, and being a felon in possession of a firearm.  See 787 F.3d at

7   1320.  The Ninth Circuit held that the District Court's failure to sever the felon in possession

8   count from the other counts was wrong in light of the potential for unfair spillover prejudice

9   resulting from proof related solely to the felon in possession count.  See id. at 1320, 1322.  This

10  proof included the fact of the defendant's prior felony conviction, which presented "[t]he danger

11  that a jury will infer present guilt from prior convictions," id. at 1321, as well as proof that the

12  defendant lied under oath in order to acquire one of the charged firearms, see id. at 1322.  The

13  Lewis panel also noted that the prosecution highlighted the defendant's prior conviction in

14  opening arguments, and that the District Court failed to instruct the jury to consider the evidence

15  on each count separately until the third day of trial.  See id. at 1322-23.  Under these

16  circumstances, and in light of the "sparse" evidence of the defendant's involvement in the killing

17  to avoid apprehension charge, the Lewis panel concluded that manifest prejudice resulted from

18  the decision not to sever.  See id. at 1323.

19       By contrast, the charges and the evidence that Garrido faces carry much less potential for

20  prejudice, and the evidence from which he claims manifest prejudice — his simple possession of

21  a firearm and his illegal return to the United States following deportation — are tame compared

22  to evidence of the prior felony conviction and prior perjury that was at issue in Lewis.  Indeed,

23  other decisions of the Ninth Circuit have affirmed the denial of Rule 14 severance motions in

24  cases involving charges and evidence that were much more explosive than those that Garrido

25  faces.  For instance, in United States v. Mitchell, the defendant was charged with murdering a

26  grandmother in front of her nine-year old grand daughter, then brutally killing the nine-year old

27  separately, in order to steal the grandmother's truck.  See 502 F.3d at 942-43.  Three days later,

28  the defendant and his accomplices used the truck as the getaway vehicle in a robbery.  See id. at

943-44.  The Mitchell panel held that there was no manifest prejudice from trying the murders with the subsequent robbery together.  See 502 F.3d at 963-64.  Similarly, in United States v. Lopez, the Ninth Circuit held that there was no manifest prejudice justifying severance of firearm possession counts and illegal re-entry counts from narcotics-related counts.  Lopez, 477 F.3d at 1116 ("The jury's knowledge of Lopez's status as a felon and a deported alien was not manifestly prejudicial.").

Accordingly, because Garrido has failed to establish that he would suffer manifest prejudice from a single trial of both counts in the Superseding Indictment that would undermine the fundamental fairness of the proceeding, his motion for severance under Rule 14(a) should be denied.

## IV.  CONCLUSION

For all of the foregoing reasons, Garrido's motion to suppress and for severance should be denied.

DATED:   April 16, 2008                    Respectfully submitted,

                                           JOSEPH P. RUSSONIELLO
                                           United States Attorney


                                           _____/s/_____
                                           W.S. WILSON LEUNG
                                           Assistant United States Attorney

1

2                                    TABLE OF CONTENTS

3

4    I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

5

6      II.  BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

7

8      III.  DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

9

10        A.  The Defendant's Suppression Motion Should Be Denied Because The Search

11            Of The Honda Was A Proper Inventory Search. . . . . . . . . . . . . . . . . . . . . .  13

12            1.  Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

13            2.  Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

14                i.     SFPD Policy Regarding Impounding And Towing Of Vehicles. .  13

15                ii.    The Search Of The Honda Was A Valid Inventory Search Required

16                       By SFPD General Order 9.06. . . . . . . . . . . . . . . . . . . . . . . .  8, 9, 11

17        B.  The Defendant's Severance Motion Should Be Denied. . . . . . . . . . . . . . . . .  8

18            1.     Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

19            2.     Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

20                i.     Joinder Was Proper Under Rule 8(a). . . . . . . . . . . . . . . . .  14

21                ii.    Severance Under Rule 14(a) Should Be Denied. . . . . . . .  16

22

23    IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Colorado v. Bertine, 479 U.S. 367, 375 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 11

Florida v. Wells, 495 U.S. 1, 4-5 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Katz v. United States, 389 U.S. 347, 357 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 17

South Dakota v. Opperman, 428 U.S. 364, 737 (1976). . . . . . . . . . . . . . . . . . . . . . . . .  6, 7, 9

United States v. Bowhay, 992 F.2d 229, 230 (9th Cir. 1993). . . . . . . . . . . . . . . . . . .  7, 10

United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976). . . . . . . . . . . . . . . . . .  12

United States v. Feldman, 788 F.2d 544, 550 (9th Cir. 1986). . . . . . . . . . . . . . . . . .  6, 7, 11

United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir. 1971). . . . . . . . . . . . . . . . .  12

United States v. Jawara, 474 F.3d 565, 572 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . .  12

United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir. 1986). . . . . . . . . . . . . . . . . . .  12, 14

United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir. 2007). . . . . . . . . . . . . . . . . .  12-14, 16

United States v. Mitchell, 502 F.3d 931, 963 (9th Cir. 2007). . . . . . . . . . . . . . .  12, 15, 16

United States v. Penn, 233 F.3d 1111, 1114 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . .  7

United States v. Portac, Inc., 869 F.2d 1288, 1293 (9th Cir. 1989). . . . . . . . . . . . . . . . . 13

United States v. Rambo, 74 F.3d 948, 953 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Ramos-Oseguera, 120 F.3d 1028 (9th Cir. 1997). . . . . . . . . . . . . . . . . 11

United States v. Sutcliffe, 505 F.3d 944, 958-59 (9th Cir. 2007). . . . . . . . . . . . . . . . . . 14

United States v. Terry, 911 F.2d 272 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Trengali, 2006 WL 1050170, at *7 (N.D. Cal. April 20, 2006). . . . . . . 11

United States v. Wanless, 882 F.2d 1459, 1463 (9th Cir. 1989). . . . . . . . . . . . . . . . . 6, 7, 9

United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991). . . . . . . . . . . . . . . . . . 6

United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . 10

STATE CASES

369; Penn, 233 F.3d at 1114. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATE STATUES

California Penal Code Section 186.22(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Penal Code Sections 12025(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Vehicle Code Section 12500(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

California Vehicle Code Section 4000(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

FEDERAL STATUES, RULES AND GUIDELINES

9th Cir. 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 13

Fed. R. Crim. P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rule of Criminal Procedure 14(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rule of Criminal Procedure 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16