1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
3  BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division
4  W.S. WILSON LEUNG (CABN 190939)
   Assistant United States Attorney
5
6  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-6758
7  FAX: (415) 436-7234

8  Attorneys for the United States of America

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                        SAN FRANCISCO DIVISION
12

13
   UNITED STATES OF AMERICA,        )   No. CR 07-00754 PJH
14                                   )
                                     )
15         v.                        )   DECLARATION OF DION MCDONNELL
                                     )
16 CARLOS GARRIDO,                   )
       a/k/a "Tweety,"               )   Hearing: April 30, 2008
17                                   )   Time: 1:30 pm
       Defendant.                    )   Court: Honorable Phyllis J. Hamilton
18                                   )
                                     )
19 _____

20        I, DION MCDONNELL, hereby declare and state the following:

21        1.      I am an officer with the San Francisco Police Department ("SFPD") and have

22 been an SFPD officer for almost nine years. Through my training and experience, I am familiar

23 with SFPD policy, including its policies relating to arrests and searches, as well as with criminal

24 law and criminal procedure. During my career, I have also completed training courses in a

25 variety of specific subjects, including courses relating to narcotics-related crimes, wire tap

26 investigations, avoidance of racial profiling, operating as a plain clothes officer in the

27 community, and Bay Area gangs. In August 2007, I was promoted to Sergeant, which is my

28 present rank in the SFPD.

*United States v. Garrido*, CR 07 00754 PJH
Declaration of Dion McDonnell

2. On February 25, 2006, I was on duty with my partner Officer Henry Espinoza in the Mission District of San Francisco. We were in plain clothes and in an unmarked car. During the evening, sometime after 8:00 pm, I heard over the police radio that Officers Robert Sanchez and Robert Greiner needed back-up in the vicinity of 20th and South Van Ness Streets in connection with a traffic stop. My partner and I headed to the scene to assist Officers Sanchez and Greiner.

3. When I arrived in the vicinity of 20th and South Van Ness Streets, I saw Officers Sanchez and Greiner with an individual whom I knew from to be "Tweety." I had seen Tweety on several occasions in the Mission District, and I knew him to associate with individuals affiliated with a Mission District street gang that was affiliated with the El Salvadoran "La Mara Salvatrucha" gang, also known as "MS-13." Tweety had also told me that he was a member of MS-13. I saw Tweety was standing at the rear of a gold Honda two-door car that was parked in a small private parking lot in front of a laundromat. The engine of the car was off.

4. After quickly conferring with Officers Sanchez and Greiner, I learned that Officers Sanchez and Greiner had seen Tweety driving the gold Honda with an expired registration and had followed him. Tweety had driven a short distance, parked the gold Honda in the laundromat's lot, and then exited the vehicle. Officers Sanchez and Greiner then approached Tweety and asked him whether the gold Honda belonged to him, whether he had a driver's license, and whether he had any identification. Tweety answered no to each of these questions. In light of Tweety's response that he did not have a driver's licence, Officers Sanchez and Greiner placed him under arrest.

5. Pursuant to SFPD policy (a copy of which is attached to this Declaration as Exhibit A), when someone is arrested for driving without a license, the person's car must be impounded and towed (except for commercial vehicles such as buses). In addition, because the gold Honda was parked in a location in which it could not be legally parked for twenty-four hours, Officers Sanchez and Greiner decided that we needed to move the vehicle. Further, in light of Tweety's statement that the vehicle was not his, we also wanted to identify the lawful owner of the vehicle. Thus, either Officer Sanchez or Officer Greiner radioed Sergeant Cota and

1  asked for authorization to move the vehicle, which was granted. Accordingly, Officer Sanchez,
2  who had already retrieved the gold Honda's keys from Tweety during a search incident to arrest,
3  drove the Honda approximately six blocks to the SFPD's Mission Station, while the rest of us
4  followed. A marked police car transported Tweety to the precinct for processing. The drive took
5  less than five minutes.

6        6.     Pursuant to SFPD policy, officers must create an inventory of items in any vehicle
7  that is impounded for towing. This policy exists in order to protect the SFPD against claims that
8  property was either lost or stolen from any impounded vehicles, and also for purposes of public
9  safety in case a vehicle contains any dangerous items that should be removed prior to
10 impounding. Accordingly, Officer Sanchez and I entered the gold Honda and conducted a search
11 of the vehicle.

12       7.     As noted above, I believed that Tweety was associated with the MS-13 gang, and I
13 knew, from my experience — including an arrest that occurred shortly before Tweety's arrest —
14 and training that MS-13 members often carry guns and that they often hide their guns in the dash
15 board of their cars. Thus, I conducted a thorough search of the Honda to identify not just items
16 of value, but also to identify any contraband or weapons that could be dangerous if left in the car.

17       8.     In addition, based on my experience and training, when inventorying property left
18 in a car, my practice was to look for high value items and other items that may be the subject of
19 theft and possible claims again the SFPD. In my experience, the most common high value item
20 in cars is the stereo and stereo components, including amps. Some cars have so-called "anti-
21 theft" stereos that can be pulled out from the dash board or that have removable faces. When I
22 have encountered such removable car stereos during past inventory searches, I have noted that
23 they were removable stereos on tow slips prior to towing and impounding.

24       9.     During the search of the gold Honda that Tweety was driving, Officer Sanchez
25 and I found a variety of personal property, including compacts disks, a check book, and
26 miscellaneous documents such as a smog check receipt. I also looked at the stereo and noted that
27 it was not flush with the console in which it was installed. (See Exhibit B to this Declaration,
28 which is a photograph of the center console). The stereo appeared to have a removable face, and

*United States v. Garrido*, CR 07 00754 PJH
Declaration of Dion McDonnell

1. I lightly tugged on it to determine whether it was in fact removable. When I did so, the face of the front console fell open, revealing a cavity in the dash board. (See Exhibit C to this Declaration, which is a photograph of the opened console). It appeared that the front console had been cut in order to access the space inside of the car's dash board, and the console face was used a cover for the resulting cavity. I saw inside the cavity behind the console a small pistol with a tan grip. After taking pictures of it, I retrieved the gun and preserved it for processing by the Crime Scene Unit. (See Exhibit C).

10. Following the inventorying of the gold Honda, Officer Sanchez made a general list of items found in the car and included it in his incident report. Officer Greiner, in turn, prepared a receipt for non-evidentiary items and provided a copy to Tweety. (See Exhibit D to this Declaration, which is a copy of the receipt). Pursuant to SFPD policy, whenever a car is towed, a tow slip (also known as an "Inventory of Towed Vehicle" form) which contains information about the car, the time and date of towing, and any items found in the car, must be prepared. One copy of the tow slip is left in the car and the other is sent to the SFPD's towing detail. For the car that Tweety was driving when he was arrested, Officer Greiner prepared the tow slip, which included a list of personal property found in the car. (See Exhibit E to this Declaration, which is a copy of the tow slip). Following preparation of the tow slip, the gold Honda was towed from the precinct and impounded.

11. I do not know if or when anyone claimed the gold Honda.

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED:   April 15, 2008

DION MCDONNELL
Sergeant
San Francisco Police Department

*United States v. Garrido*, CR 07 00754 PJH
Declaration of Dion McDonnell