BARRY J. PORTMAN
Federal Public Defender
ERIC MATTHEW HAIRSTON
Assistant Federal Public Defender
440 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Garrido

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CARLOS GARRIDO,<br><br>  Defendant. | No. CR 07-00754 PJH<br><br>CARLOS GARRIDO'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS, MOTION FOR SEVERANCE<br><br>**Court:** Hon. Phyllis J. Hamilton<br>**Date:**   April 30, 2008<br>**Time:**   1:30 p.m. |

### INTRODUCTION

The government was presented with two challenges in connection with Carlos Garrido's motion: (1) the burden of establishing that the warrantless search of Mr. Garrido's vehicle was conducted pursuant to a valid exception to the warrant requirement of the Fourth Amendment, and (2) the request that the government justify the otherwise improper joinder of two unrelated offenses in the same indictment. The government has failed to respond persuasively to either challenge, and Mr. Carlos Garrido respectfully requests that this court suppress all evidence obtained in the warrantless search of his vehicle and sever the two improperly-joined counts set forth against him.

///

**ARGUMENT**

**I. THE GOVERNMENT HAS NOT MET ITS BURDEN OF ESTABLISHING THAT THE SEARCH OF MR. GARRIDO'S VEHICLE WAS CONDUCTED PURSUANT TO A VALID EXCEPTION TO THE FOURTH AMENDMENT'S WARRANT REQUIREMENT**

As a preliminary matter, it is clear that the officers who conducted the warrantless search of Mr. Garrido's vehicle did so with investigatory intent. A plain reading of the incident report generated contemporaneously with the search indicates that the officers drove Mr. Garrido's vehicle to Mission Station with the sole purpose of searching for evidence - without a warrant and in violation of Mr. Garrido's Fourth Amendment rights. The officers searched Mr. Garrido's vehicle after (then) Officer McDonnell observed that "these gang members hide their guns under the dashboard." Incident Report, at 4. The report makes no mention of conducting an inventory search of the vehicle, but instead indicates that after Officer McDonnell's observation and "[d]ue to Mr. Garrido's actions and behavior and the fact that he's an 'MS' member, we drove Garrido's vehicle to Mission Station" and proceeded to conduct a warrantless search. *Id.*, at 5.

An inventory search will not be sustained where the court believes that the officers were searching for incriminating evidence of other offenses. *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986), citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1975). In the absence of probable cause for an otherwise warrantless search, an inventory search conducted as a pretext for criminal investigation violates the Fourth Amendment. *United States v. Gray*, 1993 WL 69168, *4 (N.D. Cal. 1993), citing *Feldman*, at 553.

While the government's observation is correct that an inventory search that would otherwise have been conducted need not be invalidated due to a collateral investigative motive (*see, United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the simple invocation of the term "inventory" in response to a Fourth Amendment challenge is not sufficient to remedy what is otherwise a warrantless and illegal search. Instead, when seeking to justify a warrantless vehicle search as a valid inventory search under *Opperman*, the government must demonstrate that the search was conducted both (a) pursuant to an established inventory-search policy that meets the requirements of *Opperman* and (b) "in accordance with the official procedures of the relevant

state or local police department." *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991), citing *United States v. Wanless*, 882 F.2d 1459, 1464 (9th Cir. 1989). An inventory search is illegal, and any discovered evidence must be suppressed, when the search does not comply with local inventory search procedures. *United States v. Williams*, 2007 WL 539501 (D. Oregon 2007), citing *Wanless, Colorado v. Bertine*, 479 U.S. 367 (1987). *See, Wanless*, 882 F.2d at 1463 ("to determine whether the evidence secured through the inventory searches of the vehicles in this case is admissible in federal court, we must determine whether the searches were conducted in accordance with the standard procedures [of the local police agency]").

Here, the government has successfully established that the San Francisco Police Department did in fact have a written inventory search policy in place. The government fails, however, to meet its burden of proving that the search of Mr. Garrido's vehicle was conducted in sufficient conformity with the established procedures so as to justify the otherwise warrantless and illegal intrusion. When paired with the clear investigative motive for the search, the failure of the officers to follow established impound procedures leads to the conclusion that the search of Mr. Garrido's vehicle amounted not to a standard inventory search prior to impound but instead a simple search for evidence of a crime conducted in the absence of probable cause, in the absence of a warrant, and in violation of the Fourth Amendment.

    *A.    The Officers Did Not Seek Supervisory Approval To Tow Mr. Garrido's Vehicle*

The Government devotes significant attention to the fact that SFPD policy mandates that officers tow any vehicle operated by an unlicensed driver. However, despite the various mandatory and permissible grounds by which an officer may order a vehicle towed, General Order 9.06 requires that "[e]xcept when specifically requested by an arrested person, officers shall obtain approval from a supervisory officer before towing a vehicle pursuant to arrest. The reason for the tow and the name of the supervisory officer giving approval shall be included in the incident report." *Id.*, at Section II A-3.

Neither the government's opposition, the declaration of Sergeant Dion McDonnell offered in support thereof nor the incident report prepared in connection with the warrantless

search of Mr. Garrido's vehicle sets forth any facts establishing that the arresting officers sought the requisite supervisory approval before determining that Mr. Garrido's vehicle should be towed.

    B. *The Officers Drove Mr. Garrido's Vehicle From The Scene of His Arrest In Violation of Established SFPD Policy*

Both the incident report prepared contemporaneously with the warrantless search of Mr. Garrido's vehicle and the declaration filed in support of the government's opposition indicate that the officers drove Mr. Garrido's vehicle from the scene of his arrest to the SFPD Mission Station prior to the search. Absent supervisory approval and a few specifically articulated purposes, this action was in clear contradiction of SFPD's vehicle impound policy. General Order 9.06 clearly contemplates that vehicles will be towed from the scene of arrest, and specifically requires that "[o]fficers shall not move a vehicle that is to be towed pursuant to an arrest unless they have the express permission of a supervisory officer..." *Id.*, at Section II A-5. The Order further instructs that even with supervisory permission, a vehicle may be moved prior to a tow for only three specifically articulated reasons:

  (1) Officer or citizen safety;

  (2) The protection of evidence; or

  (3) When *in the supervisor's opinion*, further investigation is necessary (emphasis added)

Finally, Section II A-5 requires that officers moving a vehicle prior to a tow specify in the incident report the reason for the tow, the reason for moving the vehicle from the scene, and the name of the supervisor giving permission to move the vehicle. *Id.*

As noted, the incident report prepared contemporaneously with the warrantless search of Mr. Garrido's vehicle makes no reference to an impound or inventory search of Mr. Garrido's vehicle, nor does the report make reference to any supervisory approval to move the car or a supervisory opinion that further investigation of the vehicle was necessary. The report simply states that "[d]ue to Garrido's actions and behavior and the fact that he's an 'MS' gang member, we drove Garrido's vehicle to Mission Station." *Id.*, at 5. Thus, the search of Mr. Garrido's

vehicle clearly fails to conform with the provision of Section II A-5 requiring that the officers document the approval and specified purpose of any movement of a vehicle from the scene of arrest.

Due to the absence of any support for a valid inventory search in the contemporaneously-drafted incident report, the government presumably relies on the declaration of Sergeant Dion McDonnell, submitted in support of their opposition, to establish that the officers moved Mr. Garrido's vehicle in conformity with established SFPD procedures.  Of course, Sergeant McDonnell cannot, and does not, assert that the movement and subsequent warrantless search of Mr. Garrido's vehicle was documented pursuant to established policy.  Instead, the government relies on Sergeant McDonnell for his statement that "either Officer Sanchez or Officer Greiner radioed Sergeant Cota and asked for authorization to move the vehicle, which was granted." *Id.*, at ¶5.

This assertion is unsupported by further facts and devoid of evidentiary value.  The declaration provides no foundation for any personal knowledge on the part of Sergeant McDonnell as to whether one of the officers did in fact request permission to move the vehicle, from whom such permission was requested, and whether such permission was in fact granted.  Indeed, the only fact on this topic that Sergeant McDonnell can competently establish is that he personally did *not* seek the requisite permission to move Mr. Garrido's vehicle.  Having failed to establish that the requisite supervisory permission was obtained prior to moving Mr. Garrido's vehicle from the scene of his arrest, the government has also failed in its burden of proving that the warrantless search of the vehicle was conducted in conformance with SFPD's established inventory search policy.

  C. *The Officers Did Not Observe Established Procedures Regarding Recovery of a Firearm During an Inventory Search*

Section III B-2 of General Order 9.06 articulates the specific procedures that officers are to follow upon recovery of a firearm from a vehicle in the course of an inventory search.  The section provides that upon locating a firearm in connection with an inventory search, the officer is to complete property receipt form "SFPD 315" and book the firearm as "Property for

*CR 07-00754 PJH*
DEF. REPLY TO GOVERNMENT'S OPPOSITION  5

Safekeeping." Section III B-2 also requires the officer recovering the firearm to complete an incident report describing the circumstances under which the firearm was recovered. *Id.*

It does not appear that the officers conducting the warrantless search of Mr. Garrido's vehicle followed any of these procedures. As noted, the incident report describing the circumstances under which the weapon was recovered does not indicate that it was found during an inventory of the vehicle prior to impound, but instead clearly suggests that the weapon was found during a search for the weapon itself. The government has produced no property receipt form for the weapon, nor is there any indication that the weapon was booked as "Property for Safekeeping" as would be specifically required had it been recovered during the course of an inventory prior to impound. Instead, both the contemporaneously-prepared incident report and Sergeant McDonnell's declaration assert that custody of the firearm passed immediately to the Crime Scene Unit, a result inconsistent with an inventory search but entirely consistent with a search for evidence of a crime conducted without a warrant. As such, the search was illegal and all evidence obtained as a result of the search must be suppressed. *United States v. Wanless*, 882 F.2d 1463.

## II. THE GOVERNMENT HAS NOT PERSUASIVELY REBUTTED MR. GARRIDO'S ARGUMENT THAT COUNT TWO OF THE INDICTMENT IS IMPROPERLY AND PREJUDICIALLY JOINED WITH COUNT ONE

In defending its election to set forth two unrelated counts against Mr. Garrido in the same indictment, the government submits that the charges are connected together because "but for his arrest in February 2006, Garrido would not have been deported from the United States, and if he had not been deported from the United States, he would not have been able to commit the later illegal re-entry crime." Opposition, at 12. This logic only highlights the impropriety of joining the two unrelated counts under the same indictment.

Rather than being "connected together", it is clear that the two allegations set forth against Mr. Garrido are divided by two years and an intervening deportation and are thus not part of any connected pattern of conduct. The indictment itself makes no attempt to connect these two disparate allegations. See, *United States v. Terry*, 911 F.2d 272, at 276 (9th Cir. 1990). The

fact that a subsequent collateral consequence (deportation) of Mr. Garrido's 2006 arrest is an element of Mr. Garrido's current charge of illegal re-entry fails to support the otherwise improper joinder of the two counts under Rule 8(a). The government's attempt to remedy this clearly flawed indictment by asserting that the two offenses are of the "same or similar character" also fails. Apart from the common question of Mr. Garrido's alienage, the two offenses with which he is charged stem from completely different incidents and will involve two distinct sets of witnesses.

The government's reliance on *United States v. Lopez,* 477 F.3d 1110 (9th Cir. 2007) is particularly inapt when the critical distinction between the two cases is observed. *Lopez* involved a single incident whereby the defendant was found in the United States with a weapon and drugs after having been deported. *Id*., at 1111-1112. The Ninth Circuit upheld denial of the defendant's motion for severance after finding that "[e]ach of the alleged offenses arose from the same act or transaction" and that there was significant overlap in evidence for all charges. *Id.*, at 1117. Neither such finding is applicable to the case before the Court. As noted, Mr. Garrido is charged with two separate incidents separated by two full years, with only the relatively straightforward question of alienage in common.

Finally, despite the government's concession that possession of a firearm is a comparatively "tame" offense, it remains clear that the counts as currently joined would lead to the introduction of evidence of a handgun allegedly possessed by Mr. Garrido two years ago in his trial on a charge of illegal re-entry, an outcome otherwise precluded by the Federal Rules of Evidence. Similarly, the allegation that Mr. Garrido was deported and returned to the country after allegedly being found with a firearm holds no relevance - and a high risk of prejudice - for the jury that will determine whether he knowingly possessed that weapon prior to deportation. It is of no consequence that courts have tolerated the risks of such prejudice in cases where joinder was otherwise proper under Rule 8(a). Here, the initial joinder is improper, and the prejudice which springs from that impropriety demonstrates not only the logic of the rule permitting severance, but also that of the rule prohibiting improper joinder of offenses in the first instance.

**CONCLUSION**

For the foregoing reasons, Mr. Garrido respectfully requests that the Court suppress all fruits of the unlawful search of his vehicle. Mr. Garrido further requests that the Court sever Counts One and Two, which have been improperly and prejudicially joined in the indictment filed against him.

Dated: April 23, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender
          /s/
ERIC MATTHEW HAIRSTON
Assistant Federal Public Defender